

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

BARBARA J. MINNIEWEATHER,                CIVIL ACTION
        Appellant                       NO. CV03-2300-M

VERSUS

JO ANNE B. BARNHART,                      JUDGE ROBERT G. JAMES
COMMISSIONER OF SOCIAL SECURITY,          MAGISTRATE JUDGE JAMES D. KIRK
        Appellee


## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Barbara J. Minnieweather filed applications for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") in 1998, which were denied by the Social Security Administration ("SSA") in 1999. A de novo hearing was then held before an administrative law judge ("ALJ") in 2000. The ALJ found Minnieweather was insured through December 31, 2003, and that she was not considered disabled as defined by the Social Security Act at any time through that date. However, on remand by the Appeals Council, a second hearing was held before an ALJ in August 2002. The ALJ again found Minnieweather was not disabled within the meaning of the Social Security Act and, therefore, was not entitled to benefits (Tr. p. 12). The Appeals Council declined to review the ALJ's decision, which then became the final decision of the Commissioner of Social Security. Minnieweather's appeal to this

court was dismissed for failure to prosecute (Tr. p. 625).

Minnieweather filed new applications for DIB and SSI on April 10, 2003 (Tr. pp. 625, 684). A third hearing was held in May 2004 (Tr. p. 966). The ALJ found Minnieweather suffers from a renal disease for which she met Listing 6.02A as of January 28, 2004, and awarded her SSI (Tr. p.987), but denied her DIB because her disability insurance status had expired on December 31, 2003. On appeal to this court, Minnieweather filed a motion for remand based on new evidence (Doc. Item 7), which was granted on June 23, 2004 (Doc. Item 10). A fourth hearing was held before an ALJ in November 2004, to reconsider Minnieweather's disability onset date (Tr. p. 983).

In his December 22, 2004, decision, the ALJ found Minnieweather's disability insured status expired after December 31, 2003, she suffers from a renal disease for which she met Listing 6.02A on, but not before, January 29, 2004 (Tr. p. ), and therefore was entitled to supplemental security income benefits as of that date. The ALJ also found Minnieweather suffers from "severe" hypertension, congestive heart failure, insulin dependent diabetes mellitus, cataracts, and depression (Tr. p. 634). The ALJ found that, prior to January 29, 2004, Minnieweather had the residual functional capacity to perform a significant range of sedentary work and could perform work which exists in significant numbers in the national economy, such as final assembler or

2

finisher.  The ALJ concluded that Minnieweather was not disabled as
of the last date she had disability insured status, December 31,
2003, and therefore was not entitled to disability insurance
benefits.

The Appeals Council declined to review the ALJ's December 22,
2004 decision, and the ALJ's decision became the final decision of
the Commissioner of Social Security ("the Commissioner").

Minnieweather then filed this appeal for judicial review of
the Commissioner's final decision.  On appeal, Minnieweather raises
the following issues for review:

> 1. The ALJ erred in his December 22, 2004 decision in
> finding that Minnieweather did not meet Listing 6.02 for
> her end stage renal disease as of December 31, 2003, the
> last day she had disability insured status.
>
> 2. The ALJ erred in finding Minnieweather had the
> residual functional capacity to perform a significant
> range of sedentary work as of December 31, 2003.
>
> 3. The ALJ erred in failing to find Minnieweather's
> combination of impairments prevented her from performing
> any work prior to December 31, 2003.

The Commissioner filed a brief in response to Minnieweather's
appeal.  Minnieweather's appeal is now before the court for
disposition.

Eligibility for DIB

To qualify for disability insurance benefits, a plaintiff must
meet certain insured status requirements, be under age 65, file an
application for such benefits, and be under a disability as defined
by the Social Security Act.  42 U.S.C. 416(i), 423.  Establishment

3

of a disability is contingent upon two findings.  First, a plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. 423 (d)(1)(A).  Second, the impairments must render the plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. 423(d)(2).

### ALJ's Findings

To determine disability, the ALJ applied the sequential process outlined in 20 C.F.R. §404.1520(a) and 20 C.F.R. §416.920(a).  The sequential process required the ALJ to determine whether Minnieweather (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4) is unable to do the kind of work she did in the past; and (5) can perform any other type of work.  If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends.  A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis.  Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. den., 914 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995), citing Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir.1987).

4

To be entitled to benefits, an applicant bears the initial burden of showing that he is disabled.  Under the regulations, this means that the claimant bears the burden of proof on the first four steps of the sequential analysis.  Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant is capable of performing work in the national economy.  Greenspan, 38 F.3d at 237.

In the case at bar, the ALJ found that Minnieweather has not engaged in substantial gainful activity since November 9, 1998, that her disability insured status expired after December 31, 2003, and that she has severe impairments of a renal disease for which she met Listing 6.02A on, but not before, January 29, 2004 (Tr. pp. 626-627), and therefore was entitled to supplemental security income benefits as of that date.  The ALJ also found Minnieweather suffers from "severe" hypertension, congestive heart failure, insulin dependent diabetes mellitus, cataracts, and depression (Tr. p. 634).

At Step No. 5 of the sequential analysis, the ALJ found that, prior to January 29, 2004, Minnieweather had the residual functional capacity to perform a significant range of sedentary work and could perform work which exists in significant numbers in the national economy, such as final assembler or finisher.  The ALJ found that the claimant is a younger individual with a high school education and no transferable work skills (Tr. p. 638).  The ALJ

5

concluded that Minnieweather was not under a "disability" as defined in the Social Security Act as of the last date she had disability insured status, December 31, 2003, and therefore was not entitled to disability insurance benefits.

<u>Scope of Review</u>

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there were any prejudicial legal errors. <u>McQueen v. Apfel</u>, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. <u>Falco v. Shalala</u>, 27 F.3d 160, 162 (5th Cir. 1994), citing <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. <u>Singletary v. Bowen</u>, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for

that of the fact-finder. <u>Fraga v. Bowen</u>, 810 F.2d 1296, 1302 (5th Cir. 1987); <u>Dellolio v. Heckler</u>, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. <u>Allen v. Schweiker</u>, 642 F.2d 799, 801 (5th Cir. 1981). Also, <u>Anthony v. Sullivan</u>, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. <u>Dellolio</u>, 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." <u>Johnson v. Bowen</u>, 864 F.2d 340 (5th Cir. 1988); <u>Dellolio</u>, 705 F.2d at 125.

<u>Issue No. 1 - Listing 6.02</u>

Minnieweather contends the ALJ erred in her December 22, 2004, decision when she found that Minnieweather did not meet Listing 6.02 for her end stage renal disease as of December 31, 2003, the last day she had disability insured status. Specifically, Minnieweather contends the ALJ erred in finding she was disabled as of January 29, 2004, the date she was admitted to the hospital for heart failure and kidney failure due to her end stage renal disease,[1] and contends her disability onset date was before

---

[1] "End-stage kidney (or renal) disease is a complete or near complete failure of the kidneys to function to excrete wastes, concentrate urine, and regulate electrolytes. End-state kidney

December 31, 2003.

If the claimant's condition is listed, or is medically equivalent to a listed impairment, the claimant is conclusively determined disabled. Cieutat v. Bowen, 824 F.2d 348, 351 n.1 (5th Cir. 1987). Also, Selders v. Sullivan, 914 F.2d 614, 619 n. 1 (5th Cir. 1990). A claimant has the burden of proving that his condition meets or equals an impairment listed in Appendix 1. Sullivan v. Zebley, 493 U.S. 521, 110 S.Ct. 885, 891-92, 107 L. Ed. 2d 967 (1990). See also, Selders v. Sullivan, 914 F. 2d 614, 619(5th Cir. 1990). For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. Sullivan v. Zebley, 110 S. Ct. at 891.

Listing 6.02(A) states:

-------------------

disease occurs when the kidneys are no longer able to function at a level that is necessary for day to day life. It usually occurs as chronic renal failure worsens to the point where kidney function is less than ten percent of normal. At this point, the kidney function is so low that without dialysis or kidney transplantation, complications are multiple and severe and death will occur from accumulation of fluids and waste products in the body. ...End-stage renal disease almost always follows chronic kidney failure, which may exist for ten to twenty years or more before progressing to become end-stage renal disease. ...The patient usually has a long history of chronic kidney failure, which has progressed." MEDLINEplus Health Information, Medical Encyclopedia: End-Stage Kidney Disease, *available at* http://www.nlm.nih.gov/medlineplus/encyclopedia.html (a service of the U.S. National Library of Medicine and the National Institutes of Health).

8

"Impairment of renal function, due to any chronic renal disease expected to last 12 months (e.g. hypertensive vascular disease, chronic nephritis, nephrolithiasis, polycystic disease, bilateral hydronephrosis, etc.). With:
A.   Chronic   hemodialysis   or   peritoneal   dialysis necessitated by irreversible renal failure;..."

Minnieweather contends that on May 26, 2002, she had an abnormal renal ultrasound (Tr. pp. 794, 798), on March 18, 2002, her creatinine level was 1.9 (Tr. p. 755), on April 22, 2003, her creatinine level was 1.7 (Tr. p. 747), and on March 10, 2004, her creatinine level was 2.5 (Tr. pp. 936, 941). Minnieweather claims she was diagnosed with renal failure in November 2003 and admitted to the hospital with renal failure and congestive heart failure on January 29, 2004, but contends did not begin dialysis until March 17, 2004, due to an inability to pay for it. However, Minnieweather's evidence submitted with her motion to remand (Doc. Item 7) shows hemodialysis was ordered for her on March 12, 2004, after the lab results from March 11, 2004 were reviewed. On March 23, 2004, a note was made that Minnieweather had not had an appointment with Dr. Minor because she did not have insurance coverage (she was in the process of trying to get Medicaid). A note on April 1, 2004 indicated Minnieweather had begun hemodialysis for end-stage renal disease secondary to diabetes (Doc. Item 7).

Minnieweather was diagnosed with heart and kidney failure at E.A. Conway Medical Center on January 29, 2004 (Tr. p. 932). On

January 31, 2004, Minnieweather was evaluated with chronic renal insufficiency (Tr. p. 930). Minnieweather's need for dialysis was noted in February 2004 (Tr. p. 924), and her medical records indicated Minnieweather began receiving hemodialysis three times per week on March 17, 2004 (Tr. pp. 935-937).

To meet Listing 6.02(A), Minnieweather must show she was undergoing chronic dialysis. Although Minnieweather claims she needed dialysis prior to December 31, 2003, Minnieweather has not pointed to any medical evidence in the administrative record that shows dialysis was prescribed for her in 2003. Therefore, Minnieweather has failed to carry her burden of proving she meets Listing 6.02(A).

Substantial evidence supports the Commissioner's conclusion that Minnieweather did not meet Listing 6.02(A) prior to January 29, 2004.

## Issue 2 - Residual Functional Capacity

Next, Minnieweather contends the ALJ erred in finding she had the residual functional capacity to perform a significant range of sedentary work as of December 31, 2003.

A claimant's impairments may cause physical or mental limitations that affect what he can do in a work setting. Residual functional capacity is a medical assessment, based upon all of the relevant evidence, of the work a claimant can perform despite his or her limitations. 20 C.F.R. §404.1545, §416.945. Although the

10

burden of proof in a disability case is on the claimant to show that he is unable to perform his usual line of work, once that fact is established, the burden shifts to the Commissioner to show that the claimant is able to perform some other kind of substantial work available in the national economy. Herron v. Bowen, 788 F. 2d 1127, 1131 (5th Cir. 1986), and cases cited therein. Also, Babineaux v. Heckler, 743 F.2d 1065, 1067 (5th Cir. 1984). The Commissioner has the burden to establish a claimant's residual functional capacity. Leggett v. Chater, 67 F.3d 558, 565 (5th Cir. 1995).

When the ALJ found that Minnieweather could not return to her past relevant work, the burden shifted to the Commissioner to show that Minnieweather can perform other work in the national economy. Jones v. Heckler, 702 F.2d 616, 620 (5th Cir. 1983). The law provides that the Commissioner can meet that burden if he can prove that Minnieweather's residual functional capacity, age, education and previous work experience match those set out in any "Rule" of the Medical-Vocational Guidelines found in 20 C.F.R. Pt. 404, Subpt. P, App. 2 ("the grids") that directs a conclusion that the claimant is not disabled.

The Fifth Circuit has consistently held that once the ALJ determines that a claimant suffers from a nonexertional impairment that prevents her from performing her past relevant work, the Commissioner must produce expert vocational testimony or other

similar evidence to establish that other jobs exist in the national economy that the claimant can perform.  <u>Fields v. Bowen</u>, 805 F.2d 1168, 1170 (5th Cir. 1986), and cases cited therein.  The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed.  A vocational expert is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job.  <u>Fields</u>, 805 F.2d at 1170.

In the case at bar, the VE testified that Minnieweather's past relevant work as a nurse's aide was medium exertional level work, and her past work relevant as a sales attendant was light work (Tr. p. 1004).  Since the ALJ found Minnieweather could only perform sedentary work, Minnieweather could no longer do her past relevant work (Tr. p. 1004).  The ALJ further found that, prior to January 29, 2004, Minnieweather could do sedentary work activity with frequent climbing, balancing, stooping, kneeling, crouching and crawling, but must avoid even moderate exposure to extreme heat, cold, wetness, humidity, fumes, gases, or work requiring frequent near acuity, and that Minnieweather had moderate limitations in her ability to understand, remember, and carry out detailed instructions, and moderate limitations in her ability to maintain attention and concentration for extended periods and to set goals

12

independently of others, but no limitations in her ability to understand, remember and carry out simple instructions (Tr. p. 636). Based on those functional limitations, the VE testified Minnieweather could do such sedentary work as final assembler or finisher (Tr. pp. 1005-1008).

Minnieweather argues she has to lie down if her blood sugar drops too much, which happened once when she overslept and did not take her insulin shot on time, or occurs if her medicine makes her blood sugar drop too much (Tr. pp. 997-998). Minnieweather contends that, since the VE testified there was no work she would be able to do if she had to lie down for an hour every day (Tr. p. 1007), the ALJ erred in finding she can do any work. However, Minnieweather did not testify that she has to lie down everyday, but that she has to lie down if her blood sugar drops too low; Minnieweather's testimony did not indicate that happened every day.

Therefore, this argument is meritless. Substantial evidence supports the Commissioner's finding that Minnieweather could perform some sedentary work before January 29, 2004.

Issue 3 - Vocational Expert Evaluation

Minnieweather contends the ALJ erred in failing to find her combination of impairments prevented her from performing any work prior to December 31, 2003. Specifically, Minnieweather argues that Dr. Richard H. Galloway, a vocational counselor, evaluated her on April 21, 2004, and concluded she could not work due to taking

13

dialysis three times a week and the Louisiana Division of Vocational Rehabilitation had not been able to find her a job. Since Dr. Galloway's opinion concerns Minnieweather's ability to work after she began receiving dialysis, a time period for which she has been found disabled, it is not relevant to the time period prior to January 29, 2004, which is at issue herein. Minnieweather also contends Dr. Michael W. Archie, a kidney specialist, stated in his November 15, 2004 report that Minnieweather should be considered disabled due to her ERD, hypertension, and dialysis treatments (Tr. p. 963). Dr. Archie's report is also irrelevant to the time period prior to January 29, 2004. This issue is meritless.

<u>Conclusion</u>

Based on the foregoing discussion, IT IS RECOMMENDED that the final decision of the Commissioner be AFFIRMED and that Minnieweather's appeal be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered

by the district judge before he makes a final ruling.

A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.

THUS DONE AND SIGNED at Alexandria, Louisiana, on this _6_ day of June, 2007.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE